UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

First National Bank of Omaha,

       Plaintiff,

v.                                                  Civil No. 10-1155 (JNE/FLN)
                                                  ORDER

Anxon, Inc., and Lawrence W. Abdo,

       Defendants.

---

Mark R. Bradford, Esq., Bassford Remele, PA, appeared for Plaintiff First National Bank of Omaha.

Jeremy P. Knutson, Esq., Knutson Law Office, LLC, appeared for Defendants Anxon, Inc., and Lawrence W. Abdo.

---

First National Bank of Omaha brought this action against Anxon, Inc., and Lawrence Abdo for breach of contract, breach of guaranty, and unjust enrichment after Anxon failed to repay a loan and Abdo failed to pay Anxon's indebtedness to the bank. The case is before the Court on First National Bank's Motion for Summary Judgment.[1] For the reasons set forth below, the Court grants the motion.

## I. BACKGROUND

In August 1999, Anxon borrowed $5,278,000 from First National Bank to purchase and develop real estate in Phoenix, Arizona. Anxon executed a promissory note in which it agreed to make monthly interest-only payments through February 1, 2001, and to pay the principal balance by February 1, 2001. The promissory note states that the indebtedness is guaranteed by Abdo and secured by "a Deed of Trust, Security Agreement and Assignment of Leases and Rents."

---

[1] In its memorandum of law in support of its motion, First National Bank states that its claim for unjust enrichment will be moot if the Court grants the motion.

1

After purchasing the real estate, Anxon subdivided it, sold lots to retailers, and repaid part of the principal balance. In February 2001, the unpaid principal balance was $310,000. First National Bank and Anxon executed several agreements that ultimately extended the maturity date into 2008.

On September 1, 2008, the unpaid principal balance was $158,097.37. That day, Anxon executed a promissory note that required Anxon to make monthly payments of approximately $3000 to First National Bank from October 2008 to October 2009 and a payment to the bank of approximately $129,000 in November 2009. On September 1, 2008, Abdo executed a guaranty in which he "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of [Anxon] to [First National Bank], and the performance and discharge of all [Anxon's] obligations under the Note and the Related Documents."

Anxon made four monthly payments under the September 2008 promissory note. In late May 2009, First National Bank, Anxon, and Abdo executed a Modification of Note and Reaffirmation of Loan Documents and Guaranty. In the Modification, made retroactive to April 1, 2009, Anxon and First National Bank acknowledged "various Events of Default pertaining to Note repayment." Anxon and Abdo acknowledged that First National Bank "will not renew, extend or otherwise modify the Loan and Note after the November 1, 2009 maturity date." Anxon agreed to make interest-only payments to the bank on the first day of each month from April to October 2009. Anxon also agreed to pay the entire unpaid principal balance no later than November 1, 2009. Abdo acknowledged that he continued to guarantee Anxon's performance. As of May 1, 2009, the outstanding principal balance was $145,907.60.

Anxon made payments through October 2009, but it did not pay the entire unpaid principal balance by November 1, 2009. It is undisputed that the unpaid principal balance

remains $145,907.60. Asked to admit that it is "in default under the terms of the Modification of Note and Reaffirmation of Loan Documents," Anxon responded, "Admit, provided however that Defendant's continuing default is the result of Plaintiff's refusal to permit Defendant's good faith attempts to cure." Asked to admit that he is "in breach of the Commercial Guaranty," Abdo responded, "Admit, provided however that Plaintiff's [sic] continuing default is the result of Plaintiff's refusal to permit Defendant's good faith attempts to cure." Anxon's and Abdo's references to their attempts to cure relate to an alleged agreement by First National Bank to accept a deed to the collateralized real property in lieu of repayment. The bank asserts that it did not agree to accept the deed in lieu of repayment.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

First National Bank moves for summary judgment on its claim against Anxon for breach of contract and on its claim against Abdo for breach of guaranty. In support, the bank argues that Anxon and Abdo admit they are in default, that they concede the amount of unpaid principal, and that the bank is not obligated to accept the deed in lieu of repayment. In response, Anxon and Abdo assert that First National Bank "failed to mitigate its damages, if any"; that the bank "fail[ed] to pursue arbitration and mediation pursuant to the parties' loan documents"; that they have not had "the full opportunity to complete discovery"; and that there is a genuine issue of material fact as to whether the bank agreed to accept the deed in lieu of payment of the remaining balance on the loan.

With regard to First National Bank's alleged failure to mitigate its damages, Anxon and Abdo neither support nor explain the assertion. The Court rejects their conclusory argument. *See Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 915 (8th Cir. 2007) ("'A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.'" (quoting *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (per curiam)); *JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 737 (8th Cir. 1995) ("[A] successful summary judgment defense requires more than argument or re-allegation; [the party] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations.").

As to First National Bank's alleged failure to arbitrate and mediate, Anxon and Abdo do not cite any provision of any loan document that requires either arbitration or mediation. *See Gilbert*, 495 F.3d at 915. Nor have they sought to enforce any alleged agreement to mediate or

4

arbitrate. *Cf. Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1240-41 (11th Cir. 2008). Thus, the Court rejects this argument.

The Court turns to the assertion that Anxon and Abdo have not been able to complete discovery. "Discovery does not need to be complete before a district court grants summary judgment." *Ballard v. Heineman*, 548 F.3d 1132, 1136 (8th Cir. 2008). A district court generally does not abuse its discretion in granting summary judgment on the basis of the record before it "[u]nless a party files an affidavit under Federal Rule of Civil Procedure 56(f) showing what facts further discovery may uncover." *Id.* at 1137. In this case, the parties exchanged discovery before filing their Rule 26(f) report. The pretrial scheduling order set November 1, 2010, as the discovery deadline. Anxon and Abdo responded to First National Bank's motion on September 9, 2010, but they did not file an affidavit under Rule 56(f) of the Federal Rules of Civil Procedure. Under these circumstances, the Court proceeds on basis of the record before it.

Finally, the Court turns to the dispute about whether the bank agreed to accept the deed in lieu of repayment. First National Bank asserts that it is not obligated to accept the remaining collateral in lieu of repayment. *See, e.g.*, *Worthen Bank & Trust Co. v. Utley*, 748 F.2d 1269, 1271 (8th Cir. 1984). Anxon and Abdo do not contest the general principle that a lender is not obligated by law to accept pledged collateral in lieu of repayment absent an agreement to do so. They maintain that First National Bank agreed, in a conversation between Abdo and a vice president of the bank, to accept the deed in lieu of repayment.

First National Bank counters that the parties did not reduce the putative agreement to writing and that the statute of frauds precludes any evidence of an oral agreement. "Under the statute of frauds, a conveyance of real property or an agreement to convey real property is invalid unless it is reduced to writing." *Peterson v. Holiday Recreational Indus., Inc.*, 726

5

N.W.2d 499, 506 (Minn. Ct. App. 2007); *see* Minn. Stat. §§ 513.04–.05 (2008).[2] Anxon and Abdo do not direct the Court to any writing that obligates First National Bank to accept the deed in lieu of repayment, and the alleged oral agreement is invalid.

Even if the statute of frauds is inapplicable, First National Bank contends that Anxon and Abdo failed to submit evidence that the bank agreed to accept the deed in lieu of repayment. Anxon and Abdo rely on Abdo's deposition testimony to support their assertion that the bank agreed to accept the deed in lieu of repayment. Abdo's deposition testimony is equivocal as to whether the parties actually reached an agreement:

> Q: Did [the vice president of First National Bank] agree, in that conversation, to accept the property that secured the debt in lieu of payment?
>
> A: She—that's kind of—it's an opinion. My belief was that she had the authority for the small amount of money to get approval for acceptance of the property in lieu of the debt.

An attempt to clarify followed:

> Q: And I just want some clarity, because I'm not sure this is clear, but did she affirmatively represent to you that the bank would accept the property in lieu of the cash payment?
>
> A: I mean, I don't know if I can answer that with a yes or no question [sic]. What I'm saying is that I'm putting it in the same context as all of the other commitments that were made by her representing the bank.

Abdo's use of "the same context as all the other commitments" made by the bank refers to his conversations with the vice president about the loan in which agreements were made, such as an extension of the maturity date, and later reduced to writing. His testimony confirms that all prior

---

[2] The parties do not raise any conflict-of-law issues.

6

agreements related to the loan were memorialized in writing. But not this one.[3] Anxon and Abdo have not raised a genuine issue of material fact as to whether the bank agreed to accept the deed in lieu of repayment.

In short, Anxon and Abdo admit they are in default under the terms of the parties' loan documents and guaranty, and they have not raised any issue that would render summary judgment in favor of First National Bank inappropriate. Thus, the Court grants summary judgment to First National Bank on its claim against Anxon for breach of contract and on its claim against Abdo for breach of guaranty.

It is undisputed that the unpaid principal balance is $145,907.60. Anxon and Abdo do not contest First National Bank's request for $10,950.01 in pre-judgment interest from November 2009 to September 2010. An additional $895.28 in pre-judgment interest through October 26, 2010, is due. Thus, the Court enters judgment in the amount of $157,752.89, plus post-judgment interest as set forth in 28 U.S.C. § 1961 (2006), in favor of First National Bank and against Anxon and Abdo, jointly and severally. *See Drovers Bank of Chi. v. Nat'l Bank & Trust Co. of Chariton*, 829 F.2d 20, 23 & n.3 (8th Cir. 1987).

---

[3] Toward the end of Abdo's deposition, the following exchange took place:

Q: At the end of that conversation was it your understanding that First National Bank had agreed to take the property back as a resolution of that loan?

A: It was my understanding that [the vice president] was in favor of that and my expectation was that we would get a return phone call or a piece of paper that addressed that and my expectation was that they would take the property back.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. First National Bank of Omaha's Motion for Summary Judgment [Docket No. 7] is GRANTED.

2. Anxon, Inc., and Lawrence W. Abdo are jointly and severally liable to First National Bank of Omaha for $157,752.89, plus post-judgment interest as set forth in 28 U.S.C. § 1961.

3. Count III of the Complaint is dismissed as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 26, 2010

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge